Good morning and may it please the court. Matthew Gordon on behalf of Appellant Matthew Mglej. Mglej. And the first time I met my client that was the first question I asked him as well. Okay well we'll say Mglej. Thank you. We'll hear you. I would like to reserve three minutes for rebuttal and I would like to begin by addressing the claims against the city defendants here and I would like to spend most of my time addressing those claims. Those claims relate to the arrest of Mr. Mglej during a peaceful nude protest in downtown Portland. It's a it's important I think to understand the context of the arrest and the context of the protest. This was not some mindless act by Mr. Mglej. This was a considered deliberate thoughtful protest. Mr. Mglej arrived in front of the federal courthouse in downtown Portland. He set up next to an engraving of a quote by Thomas Jefferson. The quote is that the boisterous sea of liberty is never without a wave. Mr. Mglej was dressed in a suit and tie. He had with him sign making materials, his iPad, a violin, and his service dog Bella. When Mr. Mglej arrived he removed his suit and he laid it out on the ground next to him in front of the Thomas Jefferson quote in a symbolic straw man like metaphor and his intent in doing this as he testified at his deposition was to convey a message of transparency in government. Mr. Mglej played his violin and he testified that he brought his violin with him because the violin is a symbol of American patriotism and he made signs with political messages on them. So your your contention in this case is that the police, Portland police, violated his civil rights by making the arrest, correct? They violated his civil rights in a number of ways, correct. Okay, violated, well I'm just talking about the arrest now, I'm not talking about the treatment in the county facility. What case would have made it clear to the policemen that they were not entitled to arrest somebody standing naked in front of the courthouse? City of Gatewood. Well is that the only case? Because I'm having difficulty with that one. First of all it's an intermediate appellate case in Oregon. It involves the Oregon law and second it says the law is not facially unconstitutional. Sometimes it's constitutional and sometimes it's sometimes it's constitutional to arrest somebody who's in the nude and sometimes it's not. So why would a reasonable police officer on the basis of one intermediate case, and I respect the intermediate court of appeals case, why would it have been clear to a reasonable police officer that there was no violation of the law here? So it was an intermediate court of appeals case. It had been on the books for more than 30 years. It dealt with the the same Portland ordinance that was at issue. Right, and said the ordinance was not facially unconstitutional. Correct. That as the Supreme Court is recognized, merely being nude in some circumstances is a First Amendment violation. Posing for example, I guess. Posing for an artist. But under other circumstances where it may interfere with the public's enjoyment of the public square, it may not be. I don't know whether this one was or wasn't based on those cases. How would a reasonable police officer know that? And I think part of the mistake here that the district court made and that the officers may have made is that they looked to federal case law interpreting the fact that the Portland anti-nudinance does not prohibit nudity, that is intended as a symbolic or communicative act, and specifically. What did the court of appeals do in that case? As I recall, it reversed the dismissal of an indecent exposure charge. Right. Because what the court of appeals decided is that the statute is not unconstitutional because they read it in such a way that it does not prohibit the type of conduct that Mr. Minkley was. Every nude protest in the world is now okay in Oregon under that statute. It's not necessarily the case that every nude protest is. Tell me, how would a police officer who was walking up to your client be able to discern between the protected nude protests and the unprotected nude protests? So the starting point I think is that Gatewood specifically identifies disrobing in public protest as an example of protected speech. And in this particular case, there were numerous trappings of a protest here. This was not, as I said, just not an individual who had disrobed on a whim and later tried to justify it by saying that he was protesting. Could your client come to this proceeding today and take off his clothes to protest that we were hearing this appeal? Well, I think that the protections inside this courtroom are different than the protections outside on the public walkway. So he could do it out front, but not here? He could do it out front, if it was part of his protest, and if it was some intended as symbolic communicative activity. Go ahead, Judge Fischer. The Gatewood case said that Oregon's Article 1, Section 8 is broader than the First Amendment. Is that correct? That is correct, Your Honor, and that's important because when the district court analyzed the issues here, it looked only to First Amendment cases, and it looked only to First Amendment cases. So the gate would say Article 1, Section 8 is broader, that difference is rooted in the text of the provision. It talks about laws shall not prohibit the freedom of expression, whereas the First Amendment, of course, talks about speech. In State v. Henry, the Oregon court made it very clear that in interpreting the Oregon Constitution, Article 1, Section 8, First Amendment cases were not necessarily informative and that the court would independently analyze issues under Article 1, Section 8, even if the statutes had already met and survived First Amendment scrutiny. So that's a Fourth Amendment claim, is it not? In other words, if your client was operating in that gray area, if you will, broader than the First Amendment, but within Oregon constitutional rights, then there was no First Amendment violation here in arresting him, correct? The primary argument on appeal relates to the fact that Mr. Miegle was not violating the law, which relates to Fourth Amendment and common law claims. That's right. So if he was exercising an Oregon constitutional right that's broader than a Federal right, then your First Amendment claim fails, does it not? The First Amendment claim doesn't necessarily fail. The First Amendment claim is a higher bar than the claim of the State. Right. No, and that's why I was saying, if you're in that area past the First Amendment, but not — but inside the Oregon Constitution, you don't have a First Amendment claim. That is correct, if we're in that area. No, we don't concede that we're in that area. We — I believe that the — Well, that's why I come back, because you keep saying, well, the district court made a mistake because it kept looking at First Amendment cases. You were making a First Amendment claim. So on the First Amendment claim, tell me what case would have made it clear to a reasonable police officer that arresting your client would violate the First Amendment? That is correct. I'm emphasizing what the Court looked at, because only one of the claims here is a First Amendment claim. And the Court's decision to analyze under the First Amendment and conclude that the arrest was lawful, that infected all the other cases. No, and I understand your argument, that you're separating the Fourth Amendment claim and the First Amendment claim. I'm now asking you to concentrate on the First Amendment claim. As Judge Fischer has pointed out, Gatewood may not help us on that, because it turns on the Oregon Constitution. So tell us what Federal case, from this Court or the Supreme Court, would have made clear to the police officers that day that an arrest would violate your client's First Amendment rights. I don't know that there's a case directly on point with respect to this type of protesting. So if that's true, is there a case close? Well, I think the issue here is about that this was decided at summary judgment. Well, but there's a qualified immunity issue here. These police officers are entitled to qualified immunity on your First Amendment claim unless some Federal case from the Supreme Court or this Court would have made it clear to them that they were violating the First Amendment by arresting your client. So I'm asking what case you would rely on to defeat their qualified immunity. Yeah. And to be clear, qualified immunity applies to the First Amendment and Fourth Amendment, not to the common law claims and not to claims against the municipality. Absolutely. I'm clear about that, so I'm still waiting for an answer to my First Amendment question. The First Amendment claim and the qualified immunity issue under the First Amendment are harder arguments for Mr. Meegly. And that's why the defeat of the First Amendment claim is harder than possible. I mean, you can say harder, but answer my colleague's question. I didn't find the case. You can rely on the First Amendment. I think the best case for this is Spence, because what Spence says is that what's required is that, not that most viewers understand everything, but that most viewers get the drift of what the protest is about or what the nude is about. Does Spence deal with a nude protester? I'm sorry? Does Spence deal with a nude protester? Spence is not a nude protester. Haven't we said that at least there has to be, well, the cases don't have to be exactly the same. They have to be the kind of similarity that a police officer, a reasonable police officer reading the decision, and I know that's a fiction, but a reasonable police officer reading the decision would have said, I can't do this because the First Amendment bars it. I'm, like my colleague, I'm having trouble finding a case that says that. I read Dallas versus Danglin. Dallas versus Danglin is pretty straight. Says, it's possible to find some kernel of expression in almost every activity a person undertakes, but such kernel is not sufficient to bring the activity within the protection of the First Amendment. That's the best we got here, is a kernel. I would submit that there's much more than a kernel here, Your Honor. Well, I don't, I didn't find it. So maybe we go back to the Fourth Amendment. Is the best thing you got on the Fourth Amendment Portland versus Gatewood? Gatewood is the case that's closest, and it's almost- Well, tell me about Gatewood a little bit. I know what they said in Gatewood, but what did, what was the ultimate holding in Gatewood? The ultimate holding was that the statute was not unconstitutional because it was, because they read it in a way that it did not prescribe- No, they didn't say that. What they said was, as applied to public nudity or indecent exposure, not intended as a protected symbolic or communicated act, the statute would be facially constitutional. But then after they got through saying that, they sent it back, didn't they? And especially, explicitly reserved their judgment on not what the subjective standard should be, but what the objective standard should be. Isn't that what they did? They, they said, they sent it back and they said that the, the, the question of whether particular nudity- You want to answer my question? Didn't they send it back and explicitly reserve the judgment? And it was especially on the objective standard that should be set. Not just because the kid says he has intent, it's okay. But is there an objective standard for such intent? An objective standard for such intent, that, that doesn't set any standard for me at all for this particular situation, except the police officers have a chance to look at the scene and say, well, what is there that shows me what he's, what he's fighting about, what he's protesting about, what he's doing? Isn't that all it says? So it says that, that symbolic nudity is protected. And it says that whether or not the nudity is symbolic in a particular case is a question of fact. And measured against what? An objective standard about what he's supposed to do. Not just his own subjective standard. So when it's an objective standard, then I have to look at what happened at the situation. Well, if I look at what happened here, your client didn't communicate a message at all, except he was nude. What message did he communicate? He mess, he communicated a message about transparency. The, and that was. Now, just a minute. I didn't even see that. What is the transparency? Because he took off his clothes? It's not just that he took off his clothes. It's that he laid his clothes out next to him on the sidewalk in a straw man like manner. And that was a detail that the officers noted and commented. What is that? What would an objective observer perceive from the clothes being laid out neatly rather than thrown on the ground? So what they would perceive and what officer Peyton, in fact, did perceive is that they were enraged in the figure like a person. No, I'm accepting that. I'm accepting that they're arranged in a figure like a person on the ground. I'm trying to be an objective observer and I see a nude person standing next to clothes lying on the ground arrayed in a, in the figure of a person. And I understand that the message that's being transmitted is. Is a, is about transparency. And there's no requirement. But then laying out the clothes doesn't really help because being naked is transparent, isn't it? The point, as Mr. Meegly testified, is that by removing his clothes and laying them out like that,  Judge, Judge Smith asked you, and that's why I'm asking. It's what an objective observer would have perceived, not what Mr. Meegly would have perceived. So I'm looking down at my notes as he had to pronounce it. So tell me what, tell me what, why you think an objective observer, the policeman, would have come along and said, my God, he's engaging in a, he's, he's engaging in expression, not merely nudity. The, the city has not identified, and I've not seen anything in Oregon law requiring that they, that the objective observer has to be able to draw a conclusion under Oregon law about what the protest is about. That's what it says in Gatewood. You're the one who cited me, Gatewood. I am, Your Honor. And if you look at City of Eugene versus Pulaski, that's another case in which subjective intent is all the court looked to it. The contention here is that it's not just subjective. Just a minute, it seems to me, I mean, I looked very carefully to try to find out then what the standard would be. And it isn't a subjective standard. Gatewood puts it right out there. I'm reserving judgment, says the judge. Not the judge, the judges. On the explicit, I'm reserving my judgment explicitly on what the objective standard ought to be. And so at that point, I'm saying to myself, well, what would the passerby's notice? What would they say? What would they understand? He couldn't even articulate it on the sidewalk. He couldn't say what it was. All he said was, well, I'm. Gatewood says that the statute is limited to a prohibition of public nudity or indecent exposure not intended as a protective symbolic or communicative act. I take your point being that he didn't just strip and expose himself. He laid out a display. And it was clear he was communicating in some way. The fact that the audience couldn't figure out exactly what he was doing doesn't take it from the realm of a communicative act. If we start parsing whether people understood the exact message, I think we're in violation of at least the Oregon concept of expressive or communicative act. I appreciate what my good colleague has suggested to you, but give me the language in one case that says that. I just read it. Well, I appreciate you would like to answer his question, Judge Fischer, but I would like to have him give me the language because I couldn't find it. I'm certainly not going to. Well, I like to get a word in edgewise every once in a while. Go ahead. No, I didn't. OK. I agree with Judge Fischer. That's the language from Gatewood that really controls here, whether or not the nudity was intended. I know I'm into deficit spending, but I want to ask you an important question about Gatewood. So I'm troubled by the fact that we have here an intermediate court of appeals opinion, and we're saying that police officers enforcing a statute should be aware of the unconstitutional reach, if you will, of the ordinance because of an intermediate court of appeals opinion. Is there some case that helps me on that? I realize this is a Fourth Amendment claim, not a First Amendment claim, but it's a little bit unusual to say we have a statute that an intermediate court has said in dictum would be unconstitutional if applied in certain ways, and police officers should therefore know, as they're enforcing the statute, that they can't arrest people under it for being nude on the street if they're. So tell me, can you help me with that? Is there some case out there that says that in enforcing state law, police officers should be aware not of the holding of a case, but of language in a case that would suggest that what they're doing is improper? So are you asking if there's other case law in Oregon? Anywhere. In other words, your Fourth Amendment argument, as I understand it, goes like this. Even if I didn't have a First Amendment right, you didn't have probable cause to arrest me because even though my conduct might appear to have violated the statute, there was an intermediate court of appeals decision 30 years ago that said, well, that said in dictum, and I kind of agree with it, that certain conduct, certain protesting conduct in the nude may be protected by the Oregon Constitution. And I'm trying to figure out what a police officer is supposed to know under those circumstances, because that's a qualified immunity analysis. What would a reasonable police officer know? So is there any case law out there that helps me with that? I think two things help. One is that the city of Gatewood specifically mentions disrobing in public to protest as something that's protected. And second, this again is Portland, and the officer who made the decision here was the officer who was in charge of the downtown special events. Well, he also went back and consulted with the city, you know, with a lawyer. He did. But that doesn't You know, now, the lawyer may not be as smart as you. But it sort of makes it hard to believe that every police officer should have known standing on the street there that this was something he couldn't arrest somebody for. That's why I'm asking the question. In his consultation with the lawyer, I actually think doesn't help him in this case. Because if you look at his declaration about what he told the lawyer, this is at ER 36, paragraph 18, he didn't give the lawyer all the facts. I'm sorry, that's at paragraph 9 of his declaration. He did not give the city attorney all the facts about what was going on. What he told the city attorney is just that Mr. Migle was nude, standing and walking about in front of the federal courthouse and claimed to be engaged in a protest. He didn't give him all the details, all the color, all the context, all the trappings that show that Mr. Migle was, in fact, engaged in a legitimate protest. And under this Court's decision in Dixon v. Wallowa County, if a officer does not provide all the relevant facts to the city attorney, then the city attorney's advice cannot be relied upon. Thank you. Thank you very much. May it please the Court. My name is Julia Glick. I represent the appellees, City of Portland, and the individually named city police officers in this matter. Your Honors, while there's been much talk of Article I, Section 8, qualified immunity resolves all of Mr. Migle's arguments on appeal. Ma'am, could I ask you a question? I believe, my understanding is, in the absence of an Oregon Supreme Court decision, the Court of Appeals decision controls. Is that not the standard in Oregon? Yes, Your Honor. But in this case, there's several Oregon Supreme Court opinions addressing the issue that appellant raises with regard to Gatewood. Since Gatewood, we've had Huffman, we've had Plowman, and all of them have addressed appellant's contention that intent alone is enough to convert an action into protected conduct under Article I, Section 8. In both Huffman and Plowman, the Oregon Supreme Court said that a person's reason for engaging in punishable conduct does not transform that conduct into protected speech. And he also said that speech accompanying that conduct is not enough to do that. And I want to stress here that appellant makes much of the fact that Mr. Migle told officers that he was protesting. But Mr. Migle repeatedly refused to tell them why he was nude, what he was protesting. And that's important. And it's not just Texas v. Johnson. It's also imported, to a certain extent, into Article I, Section 8. The notion that it has to be in some way decipherable what you're trying to communicate. That the actual nudity or whatever the punishable act is can't just accompany speech. It has to be in itself speech. And officers would have had no way of knowing that on that day. And I think part of the problem... Help me with this question. Did Mr. Migle's conduct violate Oregon law? And you're referring to the city's Indecent Exposure Ordinance? Well, he was arrested, so the police must have had probable cause... Must have thought they had probable cause to arrest him for violation of some law. What law did it violate? It violated the Indecent Exposure Ordinance the city of Portland had. But I will say that, while a good question to consider, it's not the question before the Court today. And one of the problems with Appellant's arguments is that he bases them on a whole litany of both Supreme Court and... No, well, but stick with me for a second. The Oregon cases, as I read them, suggest that somebody might have a First Amendment right to engage in a nude protest on the street. Do you agree? Well, I want to correct a misreading of Gatewood that... No, I've read Gatewood and I've read the others. But I'm just, I'm asking, you're the Oregon lawyer, so I'm asking an Oregon question, not a Federal constitutional question. Is it against the law in the city of Portland and the state of Oregon to engage in a nude protest on the street? Article 1, Section 8, so yes and no, because it is highly context specific. It would really depend on what the message of the nudity was. So you agree that Gatewood, well, but perhaps not holding it, says that as applied to some expressive conduct, the indecent exposure statute would not be constitutional? Under Article 1, Section 8? Yes. Under Article 1, Section 8, correct. It says disrobing in public to process the exploitation of females. That was the example provided in Gatewood, not disrobing in public with no understandable purpose. So that's why I wanted to follow up. So if Mr. Migle had said to the police when they came, they said, why are you protesting? And he said, I'm protesting the exploitation of females. And his conduct would have been protected? I still think there's an element of Texas v. Johnson. No, I'm talking, that's Federal constitutional law. I'm talking about Oregon constitutional law. But if you look at Pulaski, which was a case that appellant just mentioned, Pulaski is about an ordinance prohibiting the honking of horns for any reason except for the warning of other drivers. First Amendment or Oregon constitutional? This is an Oregon constitutional case, and it's an older case. In that case, they do parse the reasons why drivers honk horns. Because it's for a completely different purpose in this case, it's examining whether that ordinance was facially constitutional. But it's looking at it and saying, well, in this particular situation, you had drivers that were passing a large anti-war rally and were honking their horns, both to support anti-war protesters and pro-war protesters. So they make an observation that that was the equivalent of a driver leaning out the window and saying, hey, I agree with you. And that brings to bear a sense of observing the context, observing what people would have seen, and what does that mean? Whereas a simple horn honk without any context, even if you subjectively feel like it means something, it doesn't get that far. And Gatewood actually has language to that effect. So do we have a gender-specific First Amendment protest? If a woman had done this, people would understand it was done to protest the exploitation of women. But if a man does it, he can't do it? I mean, again, I would say we're going back to qualified immunity. I don't think an officer could make that kind of conclusion. I'm having some difficulty with your it clearly violates Oregon law argument. I'm more sympathetic to the notion that I can't figure out precisely what Oregon law is, and therefore, a police officer might not. But the notion that it's clear that what he was doing violated Oregon law strikes me as difficult, given the Oregon case. Your Honor, I want to correct that. I didn't say it was clear. I said it is the city's position that he did- To have probable cause to believe that he was violating Oregon law? For sure, because that is what a- What had he done other than merely being nude? Well, first of all, Appellant speaks a lot about the straw man and how he arranged his clothes. Well, that was not something officers saw. No, I'll give you that. And so we can only go with what officers saw. You're still not responding to my question. Okay. They come upon him. He is merely nude. Forget about whether or not they can perceive that a protest is being engaged in or not. He's standing in front of the federal courthouse, mute. May they arrest him or two for a violation of the indecent exposure statute in Oregon? The Indecent Exposure Act makes a misdemeanor out of appearing with their genitals exposed in a public place that's open to people of the opposite gender. So there is a gender component of that. And looking at the text of that, an officer would reasonably see, and there's no dispute here, that Mr. McGlay was nude and- Even though the Oregon Supreme Court has said, and the Oregon Court of Appeals has said, the statute cannot be constitutionally applied to those who are engaged in some form of protest. Again, it didn't say engaged in some form of- In symbolic speech. The conduct itself has to be speech. So again, if I was nude and making a commentary about something completely different, and using my nudity, for example, to draw attention because people will look at a nude person, that nudity isn't protected because it's not integral to my speech. And that's the distinction, is that, was he saying something with his nudity? Because one of the things officers said, and you can see it in the video, which I urge you to watch if you haven't, or presumably you have, or watch it again. You'll see officers saying, you can do this- In some cases, sending the video is not a good idea. But you'll see them saying, you put on some pants, you can continue to do what you're doing. And so the question is, what about his nudity was essential to what he was trying to say? Well, maybe he doesn't speak well. I mean, the problem is, it's apparent to me, he's not doing this in order to be indecent. God knows what he's saying, I can't tell. And I'm not sure counsel gives me a good explanation of what he was saying. But it is clear he's not trying to engage in public indecency. He's trying to protest something. He's making unintelligible signs, and he's playing the violin, and he's putting his clothes in. It's a very difficult message to perceive. But it is clear he's trying to emanate some message, isn't it? I can't go inside Mr. McGlay's head. I'm not asking you, I'm asking you as an objective observer, isn't it clear that rather than trying to engage in public indecency, he's trying to say something? God knows what, but he's trying to say something. Well, again, while the ordinance uses the word indecent, what it actually addresses is nudity in a public place, and this is discussed in Gatewood. It's not about whether it's a lewd intent, and in no way is the city suggesting that that was Mr. McGlay's intent, that it was lewd in any way. But that's what, and I can read to you from it, that's what the ordinance addresses. No, we have the ordinance. But if, and this is the question, it seems to me we're down to, it seems to me that one can in Oregon be nude and protest as long as it's a symbolic or communicative act. Would you agree with that? Yes. The devil's in the details, though. How do you determine that? And would it be, would a reasonable police officer know what Judge Smith just said? That's the question, then, it seems to me, that we're after here. Yeah. How would the reasonable police officer know this is a symbolic or communicative act? And that's the problem. And one of the issues is. Would the reasonable police officer know that the person has the right to be in the nude strip and participate in a symbolic or communicative act? Would he in Oregon, that police officer, know that that was allowed? I would suggest that. Based on the Oregon law. Yes, he would know that if it was, if that conduct was expressive, however defined, that that was allowed. And that's precisely why, in our case, the officer did call and did make an inquiry of the city attorney, why they hesitated, why they took time to really assess the situation before they acted. And they asked Mr. McGlay why. Well, then it boils down to, is there enough here for the officer to have had cause to arrest on this Portland statute because he had no idea what the symbolic or communicative act was, or that it was a symbolic and communicative act? Yeah, and that's, I think. That's my question, I mean. And I think it's easy for us, having watched the video countless times, and having, you know, re-read depositions, what officers on the ground would have seen and would have concluded, I would say would be considerably less from what we're drawing, having reviewed it. So that's why I get back to the question I was asking before. What if, when they approached this gentleman, he had said I'm protesting children starving in Africa to pick up worthy cause. Would they then have had probable cause to arrest him? I think, again, we're looking more in a Huffman, Plowman situation. No, I'm not. I'm just, see if you can answer my question. Let's assume that he made it clear that even though no one could tell by looking at him what he was protesting, that the message that he intended to give out was a worthy one of some sort, a communicative message of some sort. And he'd said that to the police. Would they then have probable cause to arrest him for violation of the code? Yes. It's not the worthiness of the message. It's whether the message is embodied in the nudity. So bad speakers are punished, but good speakers are not? No, Your Honor. It's not the worthiness of the message. No, I guess what I'm saying, when I say bad, I mean people whose nudity, people who don't communicate very well through their nudity are punished, but those who communicate well are? Ultimately, that's the notion of an objective observer. You're looking at a reasonable person. But the question really goes to, as I understand it, and I went past Portland because I don't think that really tells me, based on what they did in Portland and based on the court that said it, I was looking for something in the Supreme Court to set it. And that's where I got to symbolic or communicative act. It seems to me that's what one has to have in order not to get arrested. But if one has that kind of an act, then it seems to me then the police don't have the probable cause to arrest. And yet you are suggesting there's one further notion that not only must it be a symbolic or communicative act, but it must be the nudity must have some relation to the speech? Is that what you're telling me? Yeah, so Texas v. Johnson says there needs to be an intent to convey a particularized message with the conduct that would otherwise be punished. The problem is you keep, you win under the First Amendment, I think. We're worried here about, we're worried about the Oregon case. So I don't think there's any, at least on the qualified immunity side, and maybe I'll be dissuaded by my colleagues, I don't find a case that would have given the police officers clear notice that there was a First Amendment violation by arresting him. What we're parsing here is the intricacies of Oregon law. The Oregon Supreme Court says, well, you know, under our Constitution, maybe you have a right to stand naked in the public square if you're communicating something. And so we're trying to figure out whether a reasonable police officer on the street would have known that Mr. McGlay was within his Oregon Article 1, Section 8 rights when he was doing this. So switching back and forth to the federal cases doesn't help me. I really want to know what Oregon law is on this topic. And I think the fact that you're not Oregon practitioners is not the reason why it's not clear. I think it's not clear because Oregon jurisprudence on Article 1, Section 8 has been very fact-specific, and it hasn't reached a set of facts similar to the facts that we see before us today. So it's very hard for us as practicing lawyers and judges to reach any kind of decision on what Article 1, Section 8 means in this context, to expect that officers on the street who've called attorneys and gotten advice could reach a better conclusion than we can today. I think that speaks to the purpose of qualified immunity, giving breathing room for officers to make reasonable but mistaken judgments. And heaven knows officers really did try to get Mr. McGlay to comply. They tried to understand why he was doing what he was doing. They spoke with him. They gave him time to comply, to put on a pair of pants and continue his protest. This wasn't a split-second decision. This was a considered one, but because the contours of Article 1, Section 8 are so unclear, it was not an easy decision to make. And for that reason alone, there's qualified immunity. But even then, there's a layer of probable cause, further muddying the waters. And all of the cases that appellant cites are cases of criminal appeals. There's no layer of, with one exception, and in that exception, the officers were let off on qualified immunity, and that was Galvin. But all of the others were appeals of criminal convictions for ordinances or statutes that were then challenged under First Amendment, Article 1, Section 8. And there's some odd outliers, but we're not looking at any Section 1983 cases addressing this. So you're not seeing qualified immunity applied, which is why in appellant's briefs, you're seeing again and again them saying, well, you haven't decided whether or not Mr. McGlay actually violated the city's ordinance. Well, that's not the question in a Section 1983 case. All right, thank you. Thank you, Your Honor. Again, the city asks that you affirm the lower court's judgment. Thank you very much. I think she's used all your time. I think she added it on her end. In respect to the time, unless the court has specific questions in the briefs. I think that's fine.  Thank you, Your Honor. I think you've used all yours. You want a minute? If I could have one minute, I would. All right, I'll give you a minute. Thank you, I appreciate it. I'm being nice today. I appreciate that. Just really quickly on the point that the panel was asking about, how would the officers, would officers have known that Mr. McGlay was intending his nudity as a symbolic communicative act? It's not the case that Mr. McGlay was not at all responsive to the officers. In fact, when the officers arrived, he told them, I am protesting. And they said, you're violating the law. And he said, no, I'm not. My nudity is protected. He pulled out his iPad and showed them on his iPad case law, including Gatewood. I can't understand Gatewood. Should the police officers have been able to understand? I think they should, yes. Because as Judge Fisher correctly pointed out, what Gatewood says is, was the nudity intended as a protected or symbolic act? There's no question of that here. And Mr. McGlay, even though he didn't necessarily tell them exactly what he was protesting, he told them, he told them, this is a protected protest. Here's case law, here's Article 1, Section 8. Let me ask you a different question, and maybe it's not this statute. Is it really your position that if you are intending to communicate something, you may stand naked in the public square in Portland, even as children walk by, because you intend to communicate some message? So the statute may be overbroad if it bans all nudity. But here we have somebody standing on a busy street where young children are walking by and people who may be, you know, lots of folks are walking by. So my question is, is it really true that you may, and he stands there for hours, as I understand the record, right? He did stand there for hours, yes. Is it really true that there is no Oregon law that allows the police to stop somebody from that sort of extended amount of nudity in the middle of the day in the public square? So two things. First, and counsel said that our argument is that subjective intent is enough here. We have not made that argument. I'm really asking, is it really your position that as long as you intend to communicate something, you can stand naked on the public square for hours? As long as your nudity falls within the ambit of Gatewood, which is a protected symbolic or communicative act, the Oregon court has said in Lincoln that expression on a public walkway, a busy public walkway where some people stop and talk to some people. But Lincoln wasn't nudity. It wasn't nudity, but it doesn't, it's not limited to nudity. The statement is about expression. I'm just having, I want to make sure I understand your position. So your position is that if it were clear to an objective observer or that he had a subjective intent, one way or the other, I don't care what it is. As long as he's, as long as there's a message being transmitted, in Oregon, you break no law by standing naked in the public square for extended periods of time. Our contention is not that you break no law. Our contention is that you don't violate the Portland City Ordinance that he was arrested for. There are other laws that may apply. There may be time, place, and manner restrictions that could apply. But that's not what's at issue here. What's at issue here is simply the Portland Anti-Nudity Ordinance. Thank you. Thank you. Thank you for being pro bono. I was going to say, you did this on a pro bono basis, right? We thank you very much for that. It's a high honor for us to have lawyers who will take these cases on a pro bono basis. And we appreciate it. Thank you very much. Thank you.
judges: Fisher, N.R. Smith, Hurwitz